UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SRIMAL PRADEEP PRIYANKARA ABEYSINGHE HERATH MUDIYANSELAGE, A-242-314-944<br><br>Petitioner,<br><br>v.<br><br>WARDEN CALIFORNIA CITY DETENTION FACILITY et. al.,<br><br>Respondents. | No. 1:26-cv-02969-DAD-DMC-HC<br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

Petitioner, an immigration detainee who is proceeding with retained counsel, filed an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. <u>See</u> ECF No. 15-2. Respondent filed an answer. <u>See</u> ECF No. 19. Petitioner filed a reply, ECF No. 20, and supplemental briefing, ECF No. 21.

## I. BACKGROUND

Petitioner filed the original petition together with a motion for temporary restraining order. <u>See</u> ECF Nos. 1 and 4. The District Judge summarized the factual history as follows:

/ / /

> Petitioner, a citizen of Sri Lanka, entered the United States on or about December 6, 2021 on an A-2 visa as a foreign government official or employee to attend a miliary school in this country. (Doc. No. 8-3 at 2–3.) On July 22, 2022, the Department of the Navy reported petitioner as absent without leave in violation of the terms of his A-2 visa. (*Id.* at 3.) On August 3, 2022, the Department of the State revoked petitioner's visa. (*Id.*) On April 11, 2024, petitioner filed an application for asylum. (Doc. No. 1-1 at 3–18.) On September 24, 2025, petitioner was arrested by Immigration and Customs Enforcement ("ICE") agents pursuant to a warrant. (Doc. No. 1-3 at 2.) On the same day, immigration officials issued a notice to appear ("NTA") for petitioner. (Doc. No. 8-3 at 2.) On October 16, 2025, petitioner's asylum application was denied because the filing of the NTA stripped the United States Citizenship and Immigration Services of jurisdiction over his application. (Doc. No. 1-1 at 2.) On April 17, 2026, a superseding NTA was issued after the previously-issued NTA was determined to be defective because it was issued by an unauthorized immigration official. (Doc. Nos. 1-6 at 3; 8-2 at 1.)
>
> ECF No. 14, pgs. 1-2.

In the original petition, Petitioner asserted two claims: "(1) the government dismissed the NTA as invalid for being signed by an unauthorized official; and (2) the contents of the NTA were never explained to petitioner his native language." ECF No. 14, pg. 3 (citing ECF No. 4, pg. 3). The District Judge found these claims were unlikely to succeed on the merits because "[t]he contents of NTAs need not be explained to the petitioner in any language other than English" and "due process is not implicated when the contents of an NTA are not explained to the detainee in a language other than English." Id. at 4 (citing Sandoval-Paniagua v. Sessions, 691 F. App'x 482, 483 (9th Cir. 2017); Salazar v. Keisler, 257 F. App'x 45, 47 (9th Cir. 2007)).

In the amended petition, Petitioner argues that he has a protected liberty interest because "Respondents did not detain him for several years after his immigration status was revoked, despite being aware of his unlawful presence," and his detention in September 2025 violated his due process rights because Petitioner was not provided notice and an opportunity to be heard nor was Petitioner provided a custody determination in accordance with § 1226(a), prior to his detention. ECF No. 15-2, pgs. 5-6. Petitioner contends that the facts are analogous to Kalkan, where "this Court found that the petitioner possessed a protected liberty interest because the government did not detain the petitioner immediately after his immigration status expired." Id. at 6 (citing Kalkan v. Chestnut, No. 1:26-CV-02028-DAD-EFB, 2026 WL 788112 at *1 (E.D. Cal. Mar. 20, 2026)). Additionally, Petitioner asserts that because his notice to appear was dismissed on April 16, 2026, Respondents lacked a lawful basis for Petitioner's arrest and

detention, and therefore he is entitled to relief. See id. at 7. Finally, Petitioner asserts that his "newly issued NTA . . . was not read to him in Sinhalese, the language that he speaks and understands best." Id.

Respondents argue the petition should be denied because "Petitioner has not exhausted his administrative remedies." ECF No. 19, pg. 1. Respondents additionally "incorporate by reference arguments made in their prior pleadings (ECF Nos. 8, 13, & 17) and submit that Petitioner's Amended Petition should be denied for the reasons previously stated." Id. In their supplemental briefing, Respondents argue that Petitioner is "lawfully in immigration custody under 8 U.S.C. § 1226(a) as a superseding charging document was filed April 17, 2026." ECF No. 8, pg. 1. Further, Respondents contend that though a superseding charging document was issued after Petitioner was provided his custody determination hearing, "there was no material change in circumstances warranting a second custody re-determination hearing." Id. at 4. Respondents additionally argued that Kalkan v. Chestnut is distinguishable because Petitioner's visa was "affirmatively revoked," rather than expiring, Petitioner here was "was actively evading capture, and "the petitioner in Kalkan affirmatively applied for asylum while in *lawful* status as a B-2 visitor." ECF No. 13, pgs. 1-2 (emphasis in original).

Next, Respondent argues that this is distinguishable from Prior because here, "the government has not turned a blind-eye to Petitioner's unlawful presence in the United States . . . a reasonable time after Petitioner filed for asylum, the government took Petitioner into custody as part of a targeted counterterrorism operation." Id. at 3 (citing Prior v. Chestnut, No. 1:25-CV-01131-JLT-EPG-HC, 2026 WL 309560, at *1 (E.D. Cal. Feb. 5, 2026)). Additionally, Respondent argues that Petitioner was provided a post-deprivation bond hearing whereas the petitioner in Prior had not. See id. Thus, Respondent argues Petitioner "has been afforded due process," and the Court should therefore deny the petition. Id. at 4.

/ / /

/ / /

/ / /

/ / /

## II. DISCUSSION

The undersigned finds Petitioner's claim regarding this Notice to Appear not being read in Petitioner's native language without merit and will therefore recommend the petition be denied in part. As explained further below, the undersigned finds that Petitioner was deprived of due process when Respondents arrested Petitioner with an insufficient Warrant for Arrest and therefore the petition should be granted in part.

### A. <u>Exhaustion</u>

The Ninth Circuit has held that "a federal district court has habeas jurisdiction under 28 U.S.C. § 2241 to review *Casas* bond hearing determinations for constitutional claims and legal error." <u>Singh v. Holder</u>, 638 F.3d 1196, 1200 (9th Cir. 2011). With regard to habeas claims, "[t]he exhaustion requirement is prudential, rather than jurisdictional," and courts

> may require prudential exhaustion when:
>
> > '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'
>
> <u>Hernandez v. Sessions</u>, 872 F.3d 976, 988 (9th Cir. 2017) (quoting <u>Puga v. Chertoff</u>, 488 F.3d 812, 815 (9th Cir. 2007)).

However, "even if the three <u>Puga</u> factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" <u>Id.</u> (citing <u>Laing v. Ashcroft</u>, 370 F.3d 994, 1000 (9th Cir. 2004)). The Ninth Circuit clarified the standard for determining futility, rejecting the Second Circuit's strict test requiring "factual impossibility of relief," instead "interpret[ing] the standard more generously. We will excuse a failure to exhaust if it is very likely what [the Board's] result would have been. Thus, [w]here the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required." <u>Vasquez-Rodriguez v. Garland</u>, 7 F.4th 888, 896 (9th Cir. 2021)(internal citations and quotations omitted).

/ / /

First, as explained in the following section, the undersigned finds Kalkan instructive and therefore finds prudential exhaustion is not necessary here. In Kalkan, respondents similarly argued that the petition should be denied for failure to exhaust, but the District Judge declined to impose prudential exhaustion, found petitioner Kalkan had a protectable liberty interest, and ordered he be released immediately. See Kalkan v. Chestnut, No. 1:26-CV-02028-DAD-EFB, 2026 WL 788112 (E.D. Cal. Mar. 20, 2026).

Regardless of Kalkan's applicability, the undersigned finds that administrative review is futile because it would not provide Petitioner opportunity to remedy the alleged violation of Petitioner's constitutional rights. Petitioner is challenging his initial detention as a violation of due process. See ECF No. 15-2, pg. 8 ("[b]ecause Mr. Abeysinghe was arrested and deprived of his protected liberty interest without due process of law, he is entitled to immediate release to protect his liberty interest"). Petitioner additionally argues that the issuance of the new Notice to Appear necessitates a custody redetermination hearing. See id. The undersigned finds that an appeal of the custody determination, a decision made when Petitioner was detained pursuant to a prior Notice to Appear, would not provide Petitioner an opportunity to make these claims. See Rufino Ligario Hernandez v. Mark Wayne Mullin, et al., No. 5:26-cv-00585-JAK-ADS, 2026 WL 846037, at * 7-8 (C.D. Cal. Mar. 24, 2026) (finding "Petitioner's due process challenge is necessarily beyond the scope of the BIA's review because it is well settled that [the BIA] lack[s] jurisdiction to rule on the constitutionality of the [Immigration and Nationality Act] and [its] regulations" (internal citations omitted)); Ramirez v. Warden of the Golden State Annex Det. Facility, No. 1:26-cv-02544-DAD-AC, 2026 LX 185368, WL 1078250 (E.D. Cal. Apr. 21, 2026) (same). Therefore, the undersigned finds that administrative review could not remedy Petitioner's alleged harms and will recommend that the Court not exercise prudential exhaustion here.

**B. Due Process**

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. Hernandez v. Session, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of

the United States, regardless of immigration status. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. Id. at 693–94. Courts examine due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

1. Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. See Rico-Tapia v. Smith, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). The undersigned finds Kalkan instructive because Petitioner's visa was revoked on August 3, 2022, and Petitioner filed for asylum on April 11, 2024, but Respondents did not detain Petitioner until September 24, 2025. See Kalkan v. Chestnut, No. 1:26-CV-02028-DAD-EFB, 2026 WL 788112 (E.D. Cal. Mar. 20, 2026) (finding petitioner had a protectable liberty interest because the government "made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained" (internal citations omitted)). Respondents argue that Kalkan is distinguishable because "the petitioner in Kalkan affirmatively applied for asylum while in *lawful* status as a B-2 visitor. 2026 WL 788112, at *1. Here, Petitioner did not file his asylum application until two years after going AWOL and after his visa was cancelled." ECF No. 13, pg. 2. The undersigned disagrees. In Kalkan, the District Judge summarized the facts, providing that petitioner's B-2 visitor status expired April 30, 2024, and Petitioner filed for asylum on June 16, 2024. See Kalkan, 2026 WL 788112. Thus, the petitioner there, as here, filed for asylum when they no longer had lawful status.

/ / /

Respondents additionally argue that "the State Department affirmatively revoked Petitioner's visa, and the government apprehended Petitioner as part of a targeted counterterrorism investigation. In other words, here, the government did not approve, endorse, or acquiesce to Petitioner's unlawful presence in the United States." ECF No. 13, pg. 2 (internal citations omitted). The undersigned acknowledges this factual difference, however, does not find this difference impacts the legal determination as to whether Petitioner has a protectable liberty interest. In Kalkan, the District Judge found that "the release (or decision not to detain) is based on an evaluation, allows for a relatively normal life, and as a result the parolee or petitioner relied on at least an implicit promise that the parole or decision not to detain will be revoked only if he fails to live up to the applicable conditions." Kalkan, 2026 LX 106967, at *3, 2026 WL 788112, at *1 (internal quotations omitted) (cleaned up). The legal basis for finding the petitioner in Kalkan had a protectable liberty interest was not related to the fact that the petitioner's lawful status expired versus being affirmatively revoked but instead was due to the government's "decision not to detain" the petitioner despite knowing where petitioner was and that they lacked lawful status. The same is true here. Petitioner applied for asylum April 11, 2024, and that application required him to provide address to Respondents. See ECF No. 1-1, pg. 3. Petitioner provided his current address to Respondents but for over a year Respondents decided to not detain Petitioner.

Next, Respondents contend that Petitioner was "apprehended Petitioner as part of 'a targeted counterterrorism investigation.'"[1] ECF No. 13, pg. 2 (citing ECF No. 8-1, pg. 2; ECF No. 8-3, pg. 2 ("ABEYESINGHE is a subject of investigation by HQ-Counterterrorism & Criminal Exploitation Unit"). Respondents argue that this shows that "the government did not approve, endorse, or acquiesce to Petitioner's unlawful presence in the United States." ECF No. 13, pg. 2. However, this does not explain why the government declined to detain Petitioner for the 531 days when they were aware that Petitioner lacked lawful status and were affirmatively

---

[1] The undersigned notes that nothing in the record shows Petitioner has been accused or charged with any crime. There is not information on the basis for the investigation cited here and how Petitioner is involved.

informed of where Petitioner resided. Indeed, there is nothing in the record to indicate nor do Respondents allege that new information came to light in the time between Petitioner affirmatively providing his address to Respondents and when Petitioner was detained. Thus, the undersigned finds that this does not undercut Petitioner's protectable liberty interest.

Respondents contend that "[g]iven that Petitioner successfully evaded authorities for over two years before filing his asylum application, it is not unreasonable for the government to take a year after that to locate and arrest him." ECF No. 13, pg. 2. The undersigned disagrees. Again, Petitioner applied for asylum April 11, 2024, and that application required him to provide address to Respondents. See ECF No. 1-1, pg. 3. Respondents were informed of where Petitioner was living for almost a year and a half, or 531 days, until Petitioner was detained on September 24, 2025. Respondents do not explain how the fact that Petitioner waited two years to file his asylum application has any impact on Respondents' ability or decision to detain or not detain Petitioner during the 531 days that they knew of Petitioner's immigration status and where he was living. Indeed, Respondents do not allege that Petitioner lied about his address nor took any other measures to "evade" immigration authorities from April 11, 2024, to September 24, 2025. The narrative explaining Petitioner's detention supports this finding, as the arresting officers identified themselves as immigration enforcement, Petitioner was honest about who he was, and Petitioner complied with the officers without incident. See ECF No. 8-3, pg. 2 ("Officers and agents stopped ABEYESINGHE . . . Officers and agents wore clear and visible agency identifiers on their department issue body armor vests, announced they were ICE officers and asked ABEYESINGHE if he was Srimal Pradeep ABEYESINGHE, and he answered 'Yes.' At that moment, Officers advised ABEYESINGHE they had an immigration arrest warrant for him and took him in custody. ABEYESINGHE was placed in handcuffs.").

Next, Respondents attempt to distinguish Kalkan by arguing the distinction of the facts in Prior, which case is authority relied on in Kalkan. See ECF No. 13, pgs. 2-3; Kalkan, 2026 WL 788112, at *1 (citing Prior v. Chestnut, No. 1:25-CV-01131-JLT-EPG-HC, 2026 WL 309560 (E.D. Cal. Feb. 5, 2026)). Respondents note that, in finding a protectable liberty interest, the Court considered that petitioner in Prior was "repeatedly paroled" by the government despite

the fact that he had "deportable convictions." ECF No. 13, pg. 2 (internal citations omitted). However, the petitioner in Kalkan was not repeatedly paroled. Thus, the District Judge in Kalkan determined that Prior was supportive authority, indicated by the "see also" signal used, but in deciding that the petitioner in Kalkan had a protectable liberty interest, determined that repeated parole is not necessary for such finding. Kalkan, 2026 WL 788112, at *1.

For all of the foregoing reasons, the undersigned finds Petitioner here has a protectable liberty interest in his continued release.

2. Process Due

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To determine such, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

As to the first factor, the undersigned finds that Petitioner has a substantial private interest in his continued liberty, as explained in the prior section. Next, the undersigned finds the risk of erroneous deprivation is high, based on the record before the Court, because Petitioner was not provided the procedures afforded by statute. Respondents distinguish Petitioner's arrest and detention from that of the petitioner in Gopie v. Lyons. See ECF No. 13, pgs. 3-4 (citing Gopie v. Lyons, No. 25-CV-05229-SJB, 2025 WL 3167130 (E.D.N.Y. Nov. 13, 2025). As a preliminary matter, it is not clear why Respondents cite to Gopie as the undersigned does not find Petitioner relied on that case in the petition, it is not binding authority, and Respondents state "[w]hile, here, the government does not concede that Gopie was correctly decided, the facts are also distinguishable." Id. at 3.

/ / /

/ / /

Respondents contend that "as a second basis for granting the writ, the Gopie court found the government failed to make a *required* custody determination 'at the time, or before, it arrested Gopie' . . . here, the government made that custody determination and Petitioner signed an acknowledgement of that." ECF No. 13, pgs. 3-4 (citing Gopie, 2025 WL 3167130; ECF No. 8-5) (emphasis in original). Based on the Form I-286 dated September 24, 2025, the undersigned finds Petitioner was provided an initial custody determination by a deportation officer the day he was detained. See ECF No. 8-5.

However, the Court in Gopie found a "a dispositive and independent basis to grant the writ" because the notice to appear was issued three days after petitioner's detention and over a year after the government issued the arrest warrant. Gopie, 2025 WL 3167130, at *1. Respondents here contend that Petitioner's "NTA [Notice to Appear] was issued and served *concurrently* with the warrant for petitioner's arrest. *Compare* Exh. 1 [ECF No. 13-1] *with* ECF No. 8-4." See ECF No. 13, pgs. 3-4. The record does not support such a claim. The cited documents show that Petitioner's Notice to Appear was issued on September 24, 2025, the same day as Petitioner's arrest, ECF No. 13-1, pg. 1, but the warrant for Petitioner's arrest was issued on September 18, 2025, ECF No. 8-4.

8 C.F.R. § 236.1(b)(1) provides that "**[a]t the time of issuance of the notice to appear, or at any time thereafter** and up to the time removal proceedings are completed, the **respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest**." 8 C.F.R. § 236.1(b)(1) (emphasis added). The plain language of the statute establishes that Respondents' authority to issue a Form I-200 Warrant of Arrest begins *after* a Notice to Appear is issued. See Landaverde Ardon v. Mina, No. 6:26-CV-313-JSS-LHP, 2026 WL 530199, at *3 (M.D. Fla. Feb. 26, 2026) (granting the petition and ordering petitioners immediate release based on a finding that his arrest warrant was issued before the notice to appear and "the arrest warrant must be issued at the time the notice to appear is issued or at any time thereafter. Thus, the arrest warrant cannot precede the notice to appear"). Here, Petitioner's Notice to Appear was issued on September 24, 2025, ECF No. 13-1, pg. 1, but the warrant for Petitioner's arrest was issued September 18, 2025, ECF No. 8-4. Petitioner's I-200 Warrant for

Arrest was issued before his Notice to Appear, contrary to the statute. Thus, Petitioner was not afforded adequate procedural protections and the risk of erroneous deprivation is high.

To the extent that Respondents may claim that because Petitioner was issued a Notice to Appear the day he was arrested, Respondents had authority to arrest Petitioner, the undersigned does not find that is sufficient. First, the statute is clear that the Notice to Appear must be issued prior to a Form I-200 Warrant of Arrest and here, the Notice to Appear was issued six days after the arrest warrant was issued. Further, the Notice to Appear issued the day Petitioner was arrested was "legally insufficient," as described by Respondents' counsel on April 16, 2026, because it was "signed by only a Deportation Officer and not a supervisor." ECF No. 1-6, pg. 3. Petitioner was issued a new Notice to Appear on April 17, 2026. See ECF No. 8-2. Thus, Petitioner remained in detention under the authority of a "legally insufficient" Notice to Appear for 205 days. The undersigned finds Respondents did not have authority to detain Petitioner because the government did not follow the statute which requires a Notice to Appear prior to issuing a Warrant for Arrest and the Notice to Appear issued the day Petitioner was detained was legally insufficient.

The risk of erroneous deprivation is even higher because Petitioner's Warrant for Arrest states that the signing officer determined there is probable cause to believe Petitioner is removable based on "the execution of a charging document to initiate removal proceedings against the subject" and "biometric confirmation of the subject's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." ECF No. 8-4. However, the record does not show that any charging document was initiated prior to the issuance of the Warrant for Arrest. As discussed, the Notice to Appear was issued six days after the warrant for arrest. Nothing in the record shows any charging document executed on or before September 18, 2025. Thus, one of the two bases supporting the determination that there was probable cause to arrest Petitioner was factually, facially, and procedurally improper.

/ / /

Further, I-200 warrants require the signature of specific immigration officials. See 8 C.F.R. §§ 287.5(e)(2) (listing the immigration officials who may issue an arrest warrant for immigration violations, if the official has been authorized or delegated such authority); see also Djiwaje v. Bondi, No. 2:26-cv-00344-RFB-MDC, 2026 WL 926753, 2026 LX 167476 (D. Nev. Apr. 6, 2026). Here, the warrant is digitally signed by Kevin C Radisay on September 18, 2025, but Mr. Radisay failed to provide his title on the form, despite the line indicating that such information should be recorded. See ECF No. 8-4. Respondents were ordered to "include with the answer/return any and all transcripts or other documents relevant to the determination of the issues presented in the application." ECF No. 18, pg. 7. As to whether Mr. Radisay had the statutory authority to issue an arrest warrant, Respondents provided no information. Based on the record provided, the Court is unable to determine that Mr. Radisay had the authority to issue an arrest warrant.

Thus, the undersigned finds that Petitioner was arrested pursuant to a Warrant for Arrest that was issued prior to his Notice to Appear, in violation of the statute, one of the bases for the warrant was factually inaccurate, the initial Notice to Appear was legally insufficient, as conceded by Respondents, and Respondents fail to establish that the proper official signed the Warrant for Arrest. Given this, the undersigned finds the risk of erroneous deprivation is high here because Petitioner was not afforded the procedural protections required by statute and Petitioner's arrest was unlawful. [2]

As to the government's interest, the undersigned finds that the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. Indeed, the procedural safeguards that Petitioner was deprived of are statutorily required and therefore, the government regularly provides such procedures and their interest in detaining Petitioner absent such procedures is low. In sum, the undersigned finds that the balancing factors weigh in favor of finding that Petitioner's detention violated his due process rights.

[2] Respondents do not claim that they had authority to arrest Petitioner absent a warrant.

### C. Scope of Relief

The undersigned must next determine the appropriate scope of habeas relief. Respondents argue that Petitioner is not entitled to a new bond hearing because Petitioner "has not shown materially changed circumstances to an immigration judge as required under 8 C.F.R. § 1003.19(e)." ECF No. 19, pg. 2. The undersigned disagrees. Petitioner was provided a bond hearing on December 23, 2025. See ECF No. 8-6. At that time, Petitioner was detained pursuant to a legally insufficient Notice to Appear. On April 17, 2026, Respondents issued a new Notice to Appear, ECF No. 8-2, but Petitioner has not been provided a bond hearing since that notice was issued. Given Petitioner is now detained under a superseding Notice to Appear, the undersigned finds Petitioner is, at minimum, entitled to a custody redetermination. Further, based on finding that Petitioner's due process rights were violated and Petitioner's substantial liberty interest, at such bond hearing, the government should bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community. See Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011) (holding that "given the substantial liberty interest at stake . . . we hold that the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond").

However, the undersigned will recommend that Respondents be ordered to immediately release Petitioner. As discussed, the undersigned finds Kalkan instructive as the petitioner's lawful status had expired, the petitioner provided their information to the government, and the government declined to detain the petitioner, creating a protectable liberty interest. See Kalkan, 2026 WL 788112. There, the assigned District Judge ordered the petitioner be released immediately. The undersigned acknowledges that Petitioner here was afforded a post-deprivation custody redetermination hearing while the petitioner in Kalkan was not. However, as described in the prior section, Respondents lacked authority to detain Petitioner at the time that hearing was conducted because Respondents failed to comply with the procedural requirements of Section 1226(a), specifically issuing a Warrant for Arrest prior to his Notice to Appear, the initial Notice to Appear was legally insufficient, as conceded by Respondents, and Respondents fail to establish that the proper official signed the Warrant for Arrest.

The undersigned additionally considers the relief afforded in J.A.C.P., and finds the District Judge's analysis instructive. There, the Court granted injunctive relief, ordering petitioner be released immediately because petitioner is subject to 1226(a), not 1225(b), as claimed by respondent. See J.A.C.P. v. Wofford, No. 1:25-CV-01354-KES-SKO (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025). As to relief, the Court reasoned that because petitioner was detained absent a warrant, "the government did not comply with the express terms of section 1226 when it detained petitioner, so the Court cannot conclude that he is now detained on that basis." Id. Thus, the Court ordered the petitioner be released immediately and ordered that "[i]f the government seeks to re-detain petitioner, it must provide no less than seven (7) days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered." Id. Here, Respondents concede Petitioner is subject to 1226(a) but, as in J.A.C.P, "did not comply with the express terms of 1226 when" detaining Petitioner. Thus, the undersigned will recommend that that Petitioner be released immediately and, given the violation of Petitioner's due process rights, if Respondents seek to re-detain Petitioner, they provide Petitioner pre-deprivation notice and a pre-deprivation hearing where the government should bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community.

## III. CONCLUSION

Accordingly, it is HEREBY RECOMMENDED that:

1. It is RECOMMDNED that the amended petition, ECF No. 15-2, be GRANTED IN PART and DENIED IN PART;
2. Specifically, it is RECOMMENDED that the amended petition be GRANTED as to Petitioner's due process claim and DENIED as to all other claims.
3. It is RECOMMENDED that Respondents be ordered to IMMEDITATELY RELEASE Petitioner, SRIMAL PRADEEP PRIYANKARA

ABEYSINGHE HERATH MUDIYANSELAGE, A-242-314-944, with his belongings;

4. It is RECOMMENDED that if Respondents seek to re-detain petitioner, they must provide no less than seven (7) days' notice to Petitioner and hold a pre-deprivation bond hearing where the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 13, 2026

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE